```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
STELLA AMANZE,

                Plaintiff,

         - against -                      MEMORANDUM AND ORDER

                                          18 Civ. 8808 (NRB)
TOMI ADEYEMI, LOLA SHONEYIN d/b/a
OUIDA BOOKS, MACMILLAN PUBLISHING
GROUP LLC d/b/a HENRY HOLT AND
COMPANY, and JOHN DOES 1-10,

                Defendants.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Stella Amanze commenced this action, alleging that defendants Tomi Adeyemi and Macmillan Publishing Group LLC used copyrighted material from plaintiff's work <u>Banished: A Novel</u> in defendant Adeyemi's work <u>Children of Blood and Bone</u> without authorization.  The Court previously granted the defendants' motion to dismiss the amended complaint based on the conclusion that the parties' works are not substantially similar as a matter of law.  Contemporaneously with granting the motion to dismiss, the Court also granted the defendants' request for the attorneys' fees and costs.  Before the Court is the defendants' application for the attorneys' fees and costs in the amount of $93,804.47.

I.  **BACKGROUND**

The Court detailed the background of this case in its Memorandum and Order of July 3, 2019, granting the defendants' motion to dismiss. See ECF No. 34. The Court assumes familiarity with that decision and states here only those facts necessary to resolve this application.

Plaintiff Stella Amanze is the author of the fictional literary work Banished: A Novel. Am. Compl. (ECF No. 21) ¶ 16. Defendant Tomi Adeyemi is the author of Children of Blood and Bone. Id. at ¶ 10. Defendant Adeyemi worked with defendant Macmillan Publishing Group LLC ("Macmillan") to publish, market and distribute her book. Id. at ¶ 14.

Plaintiff filed a complaint on September 26, 2018 ("Complaint"), alleging that defendant Adeyemi's work infringed the copyright of her work. See ECF No. 1. After reviewing the Complaint, defense counsel sent plaintiff's counsel a letter stating that the plaintiff's copyright infringement claim appeared "frivolous on its face" and asking plaintiff to withdraw the Complaint. Balin Decl., Ex. 2(ECF No. 38-2) at 2-4. Plaintiff, after consultation with her counsel, decided not to withdraw the Complaint. Id. at 5.

During the pre-motion teleconference on November 19, 2018, the Court expressed its skepticism about the merits of plaintiff's claims. In response, plaintiff filed an amended complaint on

2

December 10, 2018 ("Amended Complaint"). See ECF No. 21. Defendants subsequently moved to dismiss the Amended Complaint and simultaneously requested the attorneys' fees and costs under Section 505 of the Copyright Act. See ECF No. 25. On July 3, 2019, the Court granted the defendants' motion to dismiss and concluded that awarding defendants the attorneys' fees and costs was appropriate in this case. See ECF No. 34.

## II. DISCUSSION

The Court has already provided in its Memorandum and Order of July 3, 2019, the reasons underlying its decision to award defendants the attorneys' fees and costs under 17 U.S.C. § 505. See ECF No. 34 at 24-26. Therefore, we limit the discussion here to the amount to be awarded to defendants in attorneys' fees and costs.[1]

---

[1] In her memorandum of law in opposition to this application, plaintiff raises a number of arguments challenging the propriety of awarding defendants attorneys' fees. To a substantial degree, these arguments are untimely efforts at reargument. In any event, those arguments lack merit. First, the Court's Memorandum & Order of July 3, 2019, in footnote 2, already addressed the plaintiff's contention that the Court erred in considering the full text of the parties' works in resolving a motion to dismiss. Second, plaintiff contends that the Court ignored the unique arrangement of various elements in the plaintiff's work, citing Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 (2d Cir. 2003). Contrary to the plaintiff's contention, the Court considered the total concept and overall feel of the parties' works as suggested by the Second Circuit in Tufenkian. 338 F.3d at 134; see also, M&O at 22-24. Lastly, both plaintiff—through her own affidavit— and plaintiff's counsel argue that it would be unfair to award defendants the attorneys' fees given absence of bad faith and dilatory or vexatious tactics by plaintiff. In granting the defendants' request for the attorneys' fees, the Court neither found that plaintiff filed this action in bad faith nor decided

3

A. **Legal Standard**

Section 505 of the Copyright Act allows the prevailing party a recovery of "full costs," including a "reasonable" attorney's fee. 17 U.S.C. § 505. A fee award under Section 505 should be based on a calculation of the "presumptively reasonable fee," a fee that "a reasonable paying client would be willing to pay" given that such a party wishes to spend "the minimum necessary to litigate the case effectively." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). The starting point for determining the "presumptively reasonable fee" is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In resolving what a reasonable client would pay, the Court should consider the following factors as well:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience,

---

to grant defendants the attorneys' fees based on the issue of good faith. However, it is worth noting that defendants did write to plaintiff in advance of any court involvement and clearly previewed the arguments, which the Court later found persuasive. Given that other factors guiding the Court's determination of whether to grant the attorneys' fees—such as frivolousness, objective unreasonableness and the need for an attorneys' fees award in this case—strongly weigh in favor of awarding defendants the attorneys' fees, even accepting the plaintiff's argument on good faith does not warrant a different outcome.

reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

We Shall Overcome Foundation v. Richmond Org., Inc., 330 F. Supp. 3d 960, 970 (S.D.N.Y. July 31, 2018)(citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. Of Elections, 522 F.3d 182, 186 n.3 (2d Cir. 2008)). The fee applicant bears the burden of documenting the hours reasonably spent by counsel and the reasonableness of the hourly rates claimed. Allende v. United Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011).

B. **Reasonableness of Billing Rates**

As plaintiff does not raise any objection to defense counsel's hourly rates and as the Court finds those rates reasonable, no further discussion on this element is necessary.

C. **Reasonableness of Billed Tasks**

In this application, defendants seek $69,565.36[2] for the attorneys' fees incurred on the motion to dismiss by Dwight Wright Tremaine LLP ("DWT")—counsel of record for both defendants—and $3,016.00 for the attorneys' fees incurred by defendant Adeyemi's personal attorney. The Court begins its analysis by discussing

---

[2] Defendants separately seek $54.36 in the costs. Plaintiff does not challenge the costs, and the Court finds the amount incurred in the costs reasonable. Therefore, the Court separately awards defendants an award of $54.36 in the costs.

5

some of the billing items challenged by plaintiff.

      i. <u>Time Spent in Connection with the Nigerian Case</u>

First, plaintiff argues that the Court should not award defendants the attorneys' fees incurred in connection with the parties' copyright lawsuit in Nigeria involving the same claims that the Court dismissed. However, defendants maintain that they are "not seeking to recover any time charges relating to the Nigerian action," Balin Decl. (ECF No. 38) ¶ 11, and the Court's review of the DWT billing records confirms the defendants' representation.

      ii. <u>Time Spent in Preparing the Pre-motion Letter</u>

Plaintiff also claims that it was unreasonable to spend 34 hours in preparing the pre-motion letter to the Court. Plaintiff raises two arguments in support of this claim: (1) the defendants' pre-motion letter was substantially similar to the one they had sent to plaintiff in asking to withdraw the Complaint, and (2) the legal analysis in the pre-motion letter was simply a standard one, not requiring much work for an experienced copyright litigator. The Court finds neither argument compelling.

Before addressing the specifics of plaintiff's arguments, the Court notes that plaintiff mischaracterizes the amount of time defense counsel spent in preparing the pre-motion letter to the Court. In their reply brief, defendants state that defense counsel spent "approximately 12.7 hours researching and drafting

6

[the] November 9, 2019 pre-motion letter to the Court." Reply Mem. of Law (ECF No. 50) at 5. The Court's independent review of the DWT billing records confirms the number provided by defendants.

Once the actual hours are calculated, the plaintiff's arguments deflate. Moreover, neither is persuasive. Both arguments are defeated by the fact that the defendants' pre-motion letter included an additional analysis of various elements of the parties' works in terms of their substantial similarity under the Copyright Act. That analysis was a meaningful addition, distinguishing the pre-motion letter from the defendants' letter of October 31, 2018 to plaintiff. Moreover, analyzing substantial similarity between the parties' works is a legal analysis uniquely applicable to this case, refuting the characterization of the defendants' analysis in their pre-motion letter as a "standard" one.

### iii. Time Spent in Preparing the Motion to Dismiss

Plaintiff further claims that it was unreasonable for defense counsel to spend 69 hours in connection with the defendants' motion to dismiss the Amended Complaint. Broadly speaking, plaintiff has a point. However, it is not necessary for our decision to engage in an hour-by-hour, task-by-task analysis, and we decline to do so.

### iv. Defendant Adeyemi's Personal Attorney

Plaintiff challenges the defendants' application as to the

fees incurred by Mr. Hardiman, an attorney not associated with DWT and personally retained by defendant Adeyemi. The parties have pointed to no authority supporting an award of attorney's fees to an attorney who never filed a notice of appearance or directly participated in the litigation before the Court. In such circumstances, the Court has no benchmark to evaluate a fee request, even assuming one would be appropriate. Accordingly, we decline to award any fees to Mr. Hardiman.

D. **Amount to be Awarded**

Even when an award of attorney's fees is allowed by a statute, "fee awards are at bottom an equitable matter," Faraci v. Hickey-Freeman Co., Inc., 607 F.2d 1025, 1028 (2d Cir. 1979) (citing Hall v. Cole, 421 U.S. 1, 5 (1973)), and "ability to pay is appropriately to be considered" in determining the amount to be awarded. Johnson v. New York City Transit Authority, 823 F.2d 31, 33 (2d Cir. 1987). As the late Judge Weinfeld of this District stated, in determining the amount to be awarded in attorneys' fees, "the equities of the situation are to be considered to assure that although the deterrence purpose of the statute is enforced, a losing party is not subjected to financial ruin." Colucci v. New York Times Co., 533 F. Supp. 1011, 1013 (S.D.N.Y. 1982). To achieve that goal, the Court may consider the plaintiff's earning capacity, the plaintiff's financial resources and ability to pay the sum awarded, and the relative financial status of the

8

defendant. Id. at 1012-13.

The parties' application papers do not shed much light on the plaintiff's financial resources and ability to pay. Still, it is undisputed that plaintiff is an individual writer who self-published her work Banished, whereas defendant Macmillan is one of the largest trade publishers in the world. Moreover, though the need for deterrence is definitely present here, the strength of that need is limited because there is no indication that plaintiff is a serial litigant or has otherwise abused the judicial system.

In addition, in resolving an application for fee awards, "[h]ours that are excessive, redundant, or otherwise unnecessary are to be excluded." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Id. "[T]here is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015).

Upon consideration of all arguments raised by the parties and the circumstances of this case, the Court concludes that a deduction of 40% is appropriate here. Deducting 40% of the total amount billed by DWT leads to an award of $41,740 in attorneys'

fees. Although this is not an insignificant reduction, the Court in no way suggests that the DWT's representation of its clients was in any manner unreasonable or excessive. Each party in litigation has the right to be represented by counsel of its choice. Yet, the Court's reasonableness inquiry in the context of an attorneys' fees application is necessarily guided by, as discussed above, what "a reasonable paying client would be willing to pay" given that such a party wishes to spend "the <u>minimum necessary to litigate the case effectively</u>," <u>Simmons</u>, 575 F.3d at 174 (emphasis added), and this notion of "cost-effective litigation" looms even larger when a party seeks to shift its fees to the other side. Under the circumstances, the Court concludes that an award of $41,740 in attorneys' fees is appropriate to achieve the deterrence purpose contemplated by the Copyright Act Section 505 without subjecting plaintiff to financial ruin.

In this application, defendants further seek $21,168.75 in attorneys' fees and costs incurred in connection with this fee application. As defendants correctly point out, "[a] district court may award fees associated with the initial fee application and associated litigation." <u>Yurman Designs, Inc. v. PAJ, Inc.</u>, No. 98 Civ. 8697 (RWS), 2001 WL 797474, at *1 (S.D.N.Y. July 12, 2001). However, having concluded that an award of $41,740 is appropriate to achieve the deterrence purpose contemplated by the Copyright Act Section 505, the Court declines to award defendants

any additional amount in attorneys' fees incurred in connection with this application.

### III. CONCLUSION

For the foregoing reasons, the Court awards defendants a judgment in the amount of $41,794.36 ($41,740 in attorneys' fees and $54.36 in costs) against plaintiff under Section 505 of the Copyright Act. The Clerk of Court is respectfully directed to enter judgment for defendants. This Order resolves ECF Entry No. 36.

Dated: New York, New York
November 13, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE